UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

RIGOBERTO HERNANDEZ PORTILLO,    )
                                 )
            Petitioner,          )
                                 )
       v.                        )        Case No. 1:07-cr-00081-GBL
                                 )
UNITED STATES OF AMERICA,        )
                                 )
            Respondent.          )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Petitioner Rigoberto Hernandez Portillo's Motion to Vacate, Set Aside or Correct his Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 243). This case concerns the circumstances surrounding Petitioner's conviction for conspiracy to commit murder and aggravated assault in aid of racketeering. Contrary to the advice of his trial counsel, Petitioner rejected the Government's numerous plea offers, proceeded to trial where he was convicted, and received a harsher sentence than he would have received had he accepted a plea offer.

There are six issues before the Court. The first issue is whether Petitioner has demonstrated by clear and convincing evidence that he was actually innocent. The second issue is whether Petitioner has demonstrated the existence of judicial bias and misconduct where he failed to raise this issue by motion before or during the proceedings and did not raise the issue on appeal. The third issue is whether the Court was deprived of jurisdiction under *Johnson v. Zerbst* which holds that under the Sixth Amendment, federal courts have no authority to deprive an accused of his life or liberty, unless he is assisted by counsel or has waived his right to assistance of counsel. The fourth issue is whether Petitioner was entitled to a defense of entrapment where

Immigrant and Customs Enforcement ("ICE") agents released him from custody to monitor the activity of the MS-13 gang. The fifth issue is whether the prosecutors engaged in misconduct by allegedly giving the jury secret additional instructions and where the prosecutors allegedly had knowledge that Petitioner was innocent. The final issue is whether Petitioner had effective assistance of counsel during the plea bargaining stage, during witness selection and trial, and on appeal.

First, Petitioner's claims of actual innocence, judicial bias and misconduct, lack of jurisdiction, entrapment, and prosecutorial misconduct during trial are not properly before the Court on a § 2255 motion because they were either addressed during his appeal or could have been pursued on direct appeal, but were not. Additionally, even if these claims were properly pursued, Petitioner has failed to meet his burden to show "cause and actual prejudice" or a fundamental miscarriage of justice.

With respect to Petitioner's claim of actual innocence, the Court holds that he has not demonstrated his innocence by clear and convincing evidence because Petitioner relies on the same evidence that he presented to the Fourth Circuit on appeal denying involvement in the attack. The Court holds that the claim of judicial bias and misconduct fails because Petitioner's allegation of "judicial-court overreaching, lack of impartiality, bias, prejudice, discriminations, and conflicting interests" is conclusory and unsupported by the evidence. To the extent that Petitioner alleges judicial misconduct based upon the Court's alleged denial of his right to testify, Petitioner has not demonstrated the prejudice necessary for relief based on this claim. The Court holds that Petitioner's citation to *Johnson v. Zerbst* as divesting the Court of jurisdiction is inapplicable to the facts of this case because Petitioner was represented by counsel during his trial. The Court holds that Petitioner's claim of entrapment fails because the government agents'

2

actions of releasing Petitioner to assist in preventing gang activity does not qualify as inducement to participate in a brutal attack. The Court holds that Petitioner's prosecutorial misconduct claim based on alleged additional jury instructions fails because there is no evidence in the record of inappropriate contact between the prosecutors and the jury.

The Court construes Petitioner's claim of prosecutorial misconduct for the alleged withholding of exculpatory evidence as a *Brady* violation. Although this claim is properly before the Court on a § 2255 motion, the Court finds that Petitioner has failed to adduce evidence of improper and prejudicial prosecutor conduct. The Court holds that the prosecutors' conduct did not amount to a *Brady* due process violation because the agents with whom Petitioner worked testified at trial and therefore, Petitioner could have solicited the supposedly exculpatory testimony through cross-examination of these witnesses.

Additionally, while Petitioner's claims of ineffective assistance of counsel are properly before the Court on a § 2255 motion, the Court holds that Petitioner's trial counsel rendered constitutionally effective assistance, by repeatedly presenting Petitioner with favorable plea agreements. Moreover, even if the Court were to find that counsel's conduct was unreasonable, Petitioner was not prejudiced because he never exhibited any intention to plead guilty, choosing instead to assert his innocence in the present motion. The Court holds that trial counsel's decision not to call two witnesses was not unreasonable as to amount to ineffective assistance of counsel where first, one of the witnesses decided on her own not to testify and second, Petitioner has not alleged that the second witnesses possessed exculpatory testimony. The Court holds that trial counsel's actions of soliciting the Court to conduct a colloquy regarding Petitioner's rights to testify and to remain silent also does not amount to ineffective assistance of counsel. Finally,

3

Petitioner's claim that he was deprived of effective assistance of counsel on appeal fails because there is no constitutional right to appointed counsel beyond the first appeal.

Thus, the Court DENIES Petitioner's Motion to Vacate, Set Aside or Correct his Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 243).

## I.    BACKGROUND

### A. Case History

On August 9, 2007, Petitioner was indicted for conspiracy to commit murder and aggravated assault in aid of racketeering under 18 U.S.C. §§ 2, 1959(a)(3), (5)–(6). (Doc. 278.) Specifically, Petitioner was charged as a member of the Mara Salvatrucha ("MS-13") gang for an October 15, 2005 brutal attack by thirteen members of MS-13 on M.N., a fifteen-year-old member of a rival gang, and two of his friends outside a mall in Springfield, Virginia. *Id.*; *United States v. Hernandez Portillo*, 397 F. App'x 921, 922 (4th Cir. 2010). Dwight E. Crawley was appointed to represent Petitioner in this matter as his trial counsel. (Doc 243.) On August 21, 2007, Petitioner pled not guilty to all four counts in the Second Superseding Indictment and requested a jury trial. (Arraignment, Aug. 21, 2007.)

A two-week jury trial commenced on December 3, 2007. Petitioner chose not to testify on his own behalf. (Trial Tr. Dec. 12, 2007, at 1546–50.) The jury found Petitioner and his four co-defendants guilty of four counts of committing violent crimes in aid of racketeering ("VICAR"), in violation of 18 U.S.C. § 1959. *Hernandez Portillo*, 397 F. App'x at 922. The four counts consisted of: 1) conspiring to commit murder, 2) conspiring to commit aggravated assault, 3) aiding and abetting the aggravated assault of M.N., and 4) aiding and abetting the attempted murder of M.N. (Doc. 314, at 1.)

4

On March 25, 2008, Petitioner was sentenced to 288 months of incarceration, three years of supervised release, and a $100 special assessment. (Doc. 161.) Petitioner appealed his conviction to the Fourth Circuit, challenging the sufficiency of evidence supporting his conviction and the admission of relevant testimony. Petitioner was represented by Dwight Crawley on appeal as well. On October 15, 2010, the Fourth Circuit Court of Appeals affirmed Petitioner's conviction. The Court noted that after having thoroughly reviewed the record on appeal, it found "more than sufficient evidence to sustain the jury's verdict on all four counts in the indictment." *Hernandez Portillo*, 397 F. App'x at 922.

On September 9, 2011, Petitioner filed a motion requesting financial assistance of counsel, process, redress of grievances, protections and privileges on collateral writ of habeas corpus that was subsequently denied. (Doc. 242; Doc. 244.)

On October 7, 2011, Petitioner, proceeding *pro se*, filed this Motion to Vacate, Set Aside and/or Correct his Sentence Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"). (Doc. 243.) The Petitioner's *pro se* § 2255 Motion alleges six grounds for relief: (1) actual innocence of the convicted crimes; (2) judicial misconduct; (3) lack of jurisdiction; (4) entrapment; (5) prosecutorial misconduct; and (6) ineffective assistance of counsel.

On November 22, 2011, Petitioner requested leave to file an interlocutory appeal of the Court's Order denying his motion for financial assistance of counsel, process, redress of grievances, protections and privileges on collateral writ of habeas corpus. (Doc. 245.) That motion was denied on March 8, 2012. (Doc. 248.) On March 26, 2012, Petitioner filed a petition for extraordinary writ of mandamus redress, process, privileges and protections with the Fourth Circuit citing 28 U.S.C. §§ 1361, 1651, 2255, and 1331. On June 20, 2012, the Fourth Circuit dismissed the interlocutory appeal for lack of jurisdiction and denied Petitioner's request for a

Writ of Mandamus. *United States v. Hernandez Portillo*, 474 F. App'x 221, at *1 (4th Cir. 2012). The Court noted that "mandamus relief is available only when the Petitioner has a clear right to the relief sought, *In re First Fed. Sav. Loan Ass'n*, 860 F.2d 135, 138 (4th Cir. 1988), which is not the case here." *Id.*

Petitioner's § 2255 Motion is now before this Court asserting claims of actual innocence, judicial misconduct, lack of jurisdiction, entrapment, prosecutorial misconduct, and ineffective assistance of counsel.

On December 9, 2013, the Court appointed Joan Robin to represent Petitioner for the purpose of an evidentiary hearing. (Doc. 302.) On March 24, 2014, Petitioner, with the assistance of counsel, filed a Supplemental Memorandum in support of Petitioner's § 2255 Motion. (Doc. 314.) In the Supplemental Memorandum, Petitioner expanded on his previous claim that he was deprived of his constitutional right to testify by trial counsel by soliciting the Court's intervention. (*Id.* at 4.) On April 3, 2014, the Government responded to the Supplemental Memorandum by making two arguments: 1) trial counsel gave reasonable advice that was not coercive, and 2) even if trial counsel's performance was deficient, no prejudice can be shown. (Doc. 315.)

### B. Evidentiary Hearing

On April 7, 2014, the Court conducted an evidentiary hearing regarding the factual disputes raised in Petitioner's § 2255 Motion. (Doc. 316.) Petitioner was represented by his court-appointed counsel. (*Id.*) The main focus of Petitioner's testimony during the evidentiary hearing was the alleged deprivation of his constitutional right to testify at trial. With respect to the additional grounds raised in the *pro se* § 2255 Motion, for the most part, Petitioner did not pursue those allegations during the evidentiary hearing, indicating that he wished to rest on the

pleadings with regard to those arguments. Petitioner did, however, maintain at all times during the evidentiary hearing that he was innocent of the crime for which he was convicted.

During the evidentiary hearing, Petitioner clarified that he had two separate arguments regarding the right to testify. First, Petitioner argued that his trial counsel was ineffective because trial counsel (1) interfered with Petitioner's right to testify by informing the Court of the disagreement and asking the Court to intervene; (2) pressured Petitioner not to testify during the recess by threatening to show his ICE contract to the other defendants; and (3) did not raise the issue of the deprivation of his right to testify on appeal because it would have been a conflict of interest. Second, Petitioner argued that he was denied his constitutional right to testify because the manner in which the Court conducted the colloquy regarding the right to testify was coercive and pressured him into not testifying despite his desire to so.

In support of these arguments, Petitioner testified on his own behalf and also submitted into evidence five exhibits for the Court's consideration. (Doc. 316.) Petitioner testified that while he was in custody awaiting trial, he told his trial counsel that he wished to testify, but his trial counsel responded that he could not testify. As such, Petitioner asserts that the majority of the conversations with his trial counsel were regarding possible plea offers and not about preparing him to testify at trial. Petitioner testified that when the Court conducted its colloquy regarding his decision to testify against his trial counsel's recommendation, he felt that the Court was ordering him not to testify and that his sentence would be harsher if he chose to take the stand. Petitioner argued that the Court left him with the wrong impression that the Court was biased against him testifying, and therefore deterred him from testifying on his own behalf. Petitioner further testified that after the Court granted a fifteen minute recess for him to think about his decision, trial counsel insisted that he not testify and threatened that the Government

would show his ICE contract to his co-defendants who would then issue a green light (kill order) against him and his family. Petitioner asserted that had he testified at trial, his testimony would have been pivotal because it would have shown that his intent was to work as a government agent, not as a gang member.

Petitioner went on to explain the underlying attack at the Springfield Mall in 2005. He stated that the other gang members had become very suspicious of him because he was let out of custody and did not have any bond paperwork to show them. Petitioner stated that he felt pressure to act normal as if nothing had occurred because if the gang members found out he was working as an informant, they would kill him. He admitted to attending the gang meeting before the mall attack and then going to the mall, but denied giving the order to attack.

Additionally, at the evidentiary hearing, Petitioner raised a number of new arguments for the first time. Petitioner argued that his attorney was ineffective on appeal because he did not consult him regarding what issues to appeal – such as being denied the right to testify, sentencing enhancements, or leadership role in the conspiracy. Petitioner also argued for the first time that his trial counsel's motion for judgment of acquittal was insufficient and his cross examination of Shy Boy was too short. Petitioner also argued for the first time that there was a letter from Shy Boy regarding killing Petitioner that he had wanted to get entered into evidence, but the Court said it would only be entered if Petitioner testified to authenticate and explain it.

The Government then cross-examined Petitioner and presented testimony of Petitioner's trial counsel. With respect to being deprived of his constitutional right to testify, the Government argued that since that issue was not raised on appeal, it was procedurally defaulted and therefore Petitioner has the burden of showing "cause and actual prejudice." Further, the Government argued that the Court's plea colloquy was appropriate in order to make a record as required under

various ABA standards. The Government argued that Petitioner cannot show that he was prejudiced by not testifying because of the great volume of evidence that Petitioner was the leader of the gang, the one orchestrating the attack rather than a passive observer and further, his previous statements had changed so many times that he would be impeached if he were to testify. According to the Government, when Petitioner first discussed the attack with Agent Moreno, Petitioner told him that he was just shopping at the mall and learned about the attack later. Later, when Petitioner was arrested, he changed his story to admit that he was at the park and knew the gang was going patrolling (looking for rival gang members to attack), but he did not give the order. Finally, during the proffer meeting, Petitioner admitted he was at the mall, but claimed he did not receive any phone calls, but once evidence was shown to him refuting that fact, he then recanted and admitted that he made phone calls from the mall.

Trial counsel stated that he communicated with Petitioner with the assistance of an interpreter and to the extent that Petitioner did not understand something, he would ask questions to clarify. Trial counsel testified that they discussed preparation for trial such as what to expect, what witnesses would be called, and the pros and cons of testifying. Trial counsel asserted that since the trial strategy would be to paint Petitioner as a government informant, rather than actively participating in the gang, he would present evidence through the cross examination of the Government's witnesses. He advised Petitioner that it would not be in his best interest to testify because he would be open to attacks on credibility, former violence he had committed, his illegal reentry, and inquiry regarding why he had not taken affirmative steps to stop the stabbing such as informing Agent Moreno of the plan. Because Petitioner did not insist on testifying after trial counsel gave him that advice, the issue was not further discussed in advance of trial.

With respect to what occurred during the actual trial, trial counsel testified that after the Court's colloquy informing Petitioner of both his right to testify and his right to remain silent, during the recess, trial counsel spoke with Petitioner for about five minutes and explained how the trial had gone thus far, discussed the cross examination of certain witnesses, and advised that he did not believe Petitioner had anything to gain by taking the stand because he would open himself up to attacks by the Government. Trial counsel denied threatening Petitioner with the ICE contract. In particular, the ICE contract had already been admitted into evidence during the Government's case in chief, as has been stipulated to by Petitioner during the evidentiary hearing. Furthermore, as trial counsel explained, because the theory of Petitioner's case was that he was assisting the Government, there was nothing to hide about that cooperation at this point because that was the crux of his defense and the co-defendants had already heard testimony regarding his cooperation through Agent Moreno. Trial counsel testified that ultimately he told Petitioner that it was Petitioner's decision whether he wanted to testify or not and at that time, Petitioner indicated that he no longer wished to testify.

During the evidentiary hearing, a few of the other arguments raised in the *pro se* § 2255 Motion were addressed. With respect to the two witnesses that Petitioner claims his trial counsel should have contacted but did not, Petitioner conceded that his trial counsel contacted both witnesses and had discussions with them regarding whether they wanted to testify. Trial counsel testified that he spoke to the female witness over the phone but that she did not have any substantive information to add because she was not present at the crime. Trial counsel told Petitioner about the conversations and that Petitioner would have to get his witnesses to court, but no one ever showed up or provided any helpful information.

The Court also questioned Petitioner regarding the argument in his *pro se* § 2255 Motion that the prosecutor took the jury into another room to give the jurors additional instructions. Petitioner reasserted his belief that the prosecutor had given additional instructions to the jury and that at some point a law enforcement officer, who was not the courtroom security officer, was alone with the jury. Petitioner was unable to provide a concrete explanation as to what led him to believe that this improper contact had taken place. Trial counsel testified that he did not remember any federal agents or prosecutors ever being left alone with the jury or that anyone else went into the jury room other than the courtroom security officer.

## II.   DISCUSSION

### A. Standard of Review

Under 28 U.S.C. § 2255, a prisoner in federal custody may challenge the legality of a federal sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255 (2014). When seeking relief under § 2255, a petitioner bears the burden of proving his or her grounds for collateral relief by a preponderance of the evidence. *Hall v. United States*, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998) (citing *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967)).

Relief under 28 U.S.C. § 2255 is designed to remedy fundamental constitutional, jurisdictional, or other errors, and is therefore reserved for situations in which failing to grant relief would otherwise "inherently result [ ] in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). A motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255 may not be brought

as a substitute to appeal; waived claims are procedurally defaulted absent a showing of cause and actual prejudice. *United States v. Frady*, 456 U.S. 152, 167 (1982). Under *Frady*, "[t]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted Petitioner must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Id.*; *United States v. Maybeck*, 23 F.3d 888, 890 n. 1 (4th Cir.1994); *Hall v. United States*, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998). A petitioner can only overcome this procedural bar if he can show a fundamental miscarriage of justice "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see also O'Dell v. Netherland*, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151(1997).

An exception to the procedural bar applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel. *United States v. Martinez*, 136 F.3d 972, 979 (4th Cir.1998). The Sixth Amendment affords a criminal defendant the right to "reasonably effective assistance" from counsel. *Strickland v. Washington*. 466 U.S. 668, 687 (1984). To establish constitutionally defective assistance, a petitioner must satisfy a two-pronged test to prevail. *See, e.g., United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004) (citing *Williams v. Kelly*, 816 F.2d 939, 946–47 (4th Cir. 1987)). First, the petitioner must show that under the totality of the circumstances, the attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. Second, the petitioner must establish a "reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* test also applies during the plea stage prior to trial. *See, e.g., Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

12

In evaluating the first prong of the *Strickland* test, "[j]udicial scrutiny of counsel's performance 'must be highly deferential.'" *Sharpe v. Bell*, 593 F.3d 372, 382 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 689). Thus, a court must make an effort to "eliminate the distorting effects of hindsight," and presume that, at the time of the challenged action, the attorney's conduct might be the exercise of "sound trial strategy." *Strickland*, 466 U.S. at 689–99 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Moreover, the petitioner's own actions or statements may determine or substantially influence the reasonableness of counsel's actions. *Id.* at 691. As such, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not be challenged as unreasonable." *Id.* at 691.

To demonstrate that counsel's conduct was prejudicial under the second prong of Strickland, a petitioner has the affirmative duty to show that there is a reasonable probability the outcome of the trial would have been different absent counsel's errors. *Strickland*, 404 U.S. at 694.

## B. Analysis

The Court denies Petitioner's § 2255 Motion on all grounds. Petitioner's claims of actual innocence, judicial bias and misconduct, lack of jurisdiction, entrapment, and prosecutorial misconduct during trial are not properly before the Court on a § 2255 motion because they were either addressed during his appeal or could have been pursued on direct appeal, but were not. Additionally, even if these claims were properly pursued, the Petitioner has failed to meet his burden to show "cause and actual prejudice" or a fundamental miscarriage of justice.

Although Petitioner's claim of a *Brady* violation is properly before the Court on a § 2255 motion, the Court finds that Petitioner has failed to adduce evidence of improper and prejudicial

13

prosecutor conduct. Additionally, while Petitioner's claims of ineffective assistance of counsel are properly before the Court on a § 2255 motion, the Court holds that Petitioner's trial counsel rendered constitutionally effective assistance because Petitioner has not met the two-pronged *Strickland* test.

    1.  <u>Actual Innocence of Convicted Crimes</u>

Petitioner's claim of actual innocence has already been reviewed and denied by the Fourth Circuit, therefore, this claim is improper in a § 2255 motion. Even if Petitioner's claim of actual innocence was properly the subject of this § 2255 Motion, the Petitioner has failed to meet his burden of proof.

Issues raised and decided on direct appeal may not be recast "under the guise of a collateral attack." *Stitt v. United States*, 369 F. Supp. 2d 679, 685 (E.D. Va. 2005) (citing *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976)). In order to entertain the collateral attack, a movant must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack by a showing of actual innocence by clear and convincing evidence. *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999).

Petitioner argued both on direct appeal and in his § 2255 Motion a claim of "actual innocence of the crime." (Doc. 243, at 2, 4, 5, 7, 9, 12.) Petitioner argues that at the time of the attack, he was acting in his capacity as a government informant and thus should not have been found guilty of conspiracy. The Fourth Circuit reviewed the record on appeal and found more than sufficient evidence to sustain the jury's verdict on all four counts of the indictment in its October 15, 2010 opinion. *Hernandez-Portillo*, 397 F. App'x at 922.

The Court denies Petitioner's claim of innocence that he raises in his § 2255 Motion because the Fourth Circuit already addressed and dismissed this argument on direct appeal.

14

After reviewing the Petitioner's § 2255 Motion and the record, Petitioner is making the same argument he made at trial, on appeal, and he has not provided any new evidence. The Court finds that Petitioner has not shown actual innocence by clear and convincing evidence. Therefore, Petitioner has not met his burden, and his claim of actual innocence is denied.

### 2. Judicial Bias and Misconduct

Petitioner's claim of judicial bias and misconduct could have been raised on direct appeal but was not, therefore, Petitioner's claim is improper in this § 2255 Motion. Because the judicial bias and misconduct claims Petitioner alleges in his Motion were not raised in his appeal, to obtain relief, Petitioner must satisfy the two-part "cause and actual prejudice" test. *United States v. Frady,* 456 U.S. 152, 167–68 (1982). As demonstrated below, Petitioner has demonstrated neither cause and prejudice nor a miscarriage of justice, and therefore his claims of judicial misconduct are insufficiently pled.

### i.    *Recusal*

Recusal is required under 28 U.S.C. § 455(a) "in any proceeding in which [a judge's] impartiality might reasonably be questioned." *See, e.g., Liljeberg v. Health Sevices Acq. Corp.,* 486 U.S. 847, 860 (1988); *United States v. Cherry,* 330 F.3d 658, 665–66 (4th Cir. 2003); and *United States v. Mitchell,* 886 F.2d 667, 671 (4th Cir. 1989). "Alleged bias must derive from an extra-judicial source" to warrant recusal. *In re Beard,* 811 F.2d 818, 827 (4th Cir. 1987). The Supreme Court has held that where the grounds asserted as establishing bias are not derived from extra-judicial sources, a petitioner must prove the complained-of-actions "displayed deep-seated and unequivocal antagonism that would rend fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 556 (1994). A motion to recuse should be made at the "first opportunity after

discovery of the facts tending to prove disqualification." *Sine v. Local No. 992 Int'l Brotherhood of Teamsters*, 882 F.2d 913, 915–16 (4th Cir. 1989).

Here, Petitioner did not file a motion for recusal during trial, he did not raise the issue at sentencing, and he did not raise a claim of judicial bias or misconduct on appeal. Instead, Petitioner first raised his claim of judicial bias and misconduct during a collateral attack on his sentence with allegations of "judicial-court overreaching, lack of impartiality, bias, prejudice, discriminations, and conflicting interests." (Doc. 243, at 13.)

Petitioner submitted several news articles regarding misconduct and conflicts of interest, however, these articles are unrelated to his particular case. (Doc. 243.) Petitioner fails to demonstrate that this Court harbors an aversion or hostility toward Petitioner nor has Petitioner proved that this Court was of a state of mind "so resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's rulings or findings." *Liteky*, 510 U.S. at 557–58. During the evidentiary hearing on April 7, 2014, Petitioner did not make any arguments that the Court had a conflict of interest or should have recused itself. In sum, Petitioner has failed to meet his burden, and his claim of judicial bias is denied.

　　　　ii.　　*Denial of Right to Testify*

Additionally, Petitioner claims that the Court deprived him of his right to testify at trial. (Doc. 243, ¶¶ 56, 57, 62, 61.) Specifically, Petitioner's *pro se* § 2255 Motion alleges that the Court ordered him not to testify and that he was told that if he breaks the Court's order and loses the trial, he would receive the maximum sentence of life imprisonment. Furthermore, during the evidentiary hearing, Petitioner argued that the Court's colloquy regarding the right to testify and

16

right not to testify was coercive and discouraged Petitioner from testifying on his own behalf, thus denying him his constitutional right to testify.

As an initial matter, Petitioner misunderstands the proceedings that took place. There was an order in place which prevented Petitioner from testifying regarding cooperation with the Government *after* the attack at Springfield Mall on the grounds that the testimony was irrelevant to the case at hand. (*See* Doc. 146.) Beyond that, Petitioner was free to testify regarding events leading up to the attack and what occurred at Springfield Mall during the attack. (*Id.*) The Court advised Petitioner of both his right to remain silent and his right to testify if he so desired. (Trial Tr. Dec. 12, 2007, at 1546–50.) The Court explained that Petitioner's trial counsel was a very experienced criminal defense attorney who had previously worked as a prosecutor in Richmond and also worked for a judge in Arlington Circuit Court. (*Id.*) The Court explained to Petitioner that truthfulness of testimony was a factor that the Court would take into consideration during sentencing and that if the Court determined that Petitioner had lied under oath regarding the events in question, he may be subject to a harsher punishment. (*Id.*) The Court then reminded Petitioner at least three times that ultimately the decision to testify was his alone, even if his lawyer disagreed. Petitioner conceded during the evidentiary hearing that after reading the trial transcript, there is no instance where the Court threatened him with life imprisonment.

The Court allowed Petitioner a fifteen minute recess to make his final decision and instructed him that "If you decide you want to [testify], Mr. Crawley will be prepared to put you on, and you'll be able to offer your testimony." (Trial Tr. Dec. 12, 2007, at 1550.) After the Court returned from recess, Petitioner's trial counsel informed the Court that Petitioner no longer wished to testify. (*Id.* at 1551.) Petitioner was present when his trial counsel made this statement and had the assistance of an interpreter, yet he did not object to his counsel's statement that

Petitioner decided not to testify. This Court was justified in assuming that Petitioner's decision not to testify at trial was an appropriate strategic decision. *See United States v. Richardson*, 195 F.3d 192, 197 (4th Cir. 1999) (citing *United States v. McMeans*, 927 F.2d 162, 163 (4th Cir.1991)). Furthermore, during the evidentiary hearing, Petitioner conceded that after the colloquy and the recess where he had further discussions with his trial counsel, he decided that he no longer wished to testify.

Petitioner argues that the present case is similar to the District of Columbia Court of Appeals case *Arthur v. United States*, 986 A.2d 398 (D.C. 2009), in which the appeals court found that the trial court committed plain error when it impermissibility interjected itself by making comments which led defendant to waive his right to testify. *Arthur* is distinguishable from the present case for two reasons. First, in *Arthur* the trial court conducted a second colloquy after the defendant insisted for a second time on testifying. The court of appeals specifically found that:

> To be clear, the error we identify in this case is not the simple act of confirming that a defendant who has expressed an intention to testify is aware he is under no obligation to do so. Here, the trial court committed error by questioning and advising appellant *after* he had conferred with counsel and had unequivocally stated his intention to take the stand in his own defense.

986 A.2d at 412 (emphasis added). Second, the procedural history of *Arthur* is distinguishable because the issue of being denied the right to testify was raised on direct appeal and as such was subject to a plain error analysis whereas Petitioner raises the issue for the first time in a § 2255 motion, thus subjecting it to *Frady*'s "cause and actual prejudice" test. *See United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

Furthermore, the circumstances of this case are the precise type of exceptional situation contemplated in *United States v. Pennycooke*, 65 F.3d 9 (3d Cir. 1995), in which judicial intervention in the form of a colloquy by the court is required in order to ensure that a defendant

18

is aware of his or her right to testify and right to remain silent. There was clearly a difference of opinion about trial strategy between trial counsel and Petitioner regarding whether or not Petitioner should testify on his own behalf. Because Petitioner informed trial counsel that he wished to testify despite trial counsel's advice not to, trial counsel informed the Court and requested the Court to conduct a colloquy to ensure that Petitioner was aware of his rights. The fact that a colloquy was appropriate is further demonstrated by Petitioner's statements in this very § 2255 Motion in which he claims that his trial counsel nullified Petitioner's right to testify on his own behalf by threatening to expose him by providing his ICE contract to his co-defendants should he testify. (Doc. 243.)

The Court acknowledges that in retrospect, although conducting a colloquy was appropriate, perhaps the Court may have left Petitioner with the incorrect impression that the Court wanted him to follow his trial counsel's advice because of the Court's discussion of trial counsel's previous experience as a prosecutor and working for a judge. Therefore, assuming that the colloquy went too far, thereby denying Petitioner of his right to testify, Petitioner must still establish cause and actual prejudice because this claim was procedurally defaulted as it was not raised on direct appeal. *See United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

The Court finds that Petitioner has not established that he was prejudiced by being denied the ability to testify on his own behalf during trial. Even if Petitioner's claim was subject to a lower standard than *Frady*'s "cause and actual prejudice" test, such as plain error or harmless error, the Court would still find that Petitioner is not entitled to relief. *See, e.g., Ortega v. O'Leary*, 843 F.2d 258 (7th Cir. 1988) (even though trial court improperly denied defendant's right to testify, the appellate court found defendant's proposed testimony to be cumulative and therefore the error identified in defendant's § 2254 motion was harmless). Specifically, the Court

finds that had Petitioner testified during trial, his testimony would have been both cumulative and not credible, and the weight of evidence against Petitioner was overwhelming such that a jury could have found him guilty regardless.

In terms of the cumulative nature of Petitioner's testimony, Petitioner planned to testify that he was acting as a confidential informant at the time of the attack and therefore did not give the order. The agent that engaged him as an informant testified during trial and was open to cross examination by Petitioner's trial counsel. During Agent Moreno's testimony, he indicated that he had discussions with Petitioner on October 11, 2005 about the potential of cooperating to provide truthful and accurate information about the activities of MS-13. (Trial Tr. Dec. 10, 2007, at 1098–1101.) Agent Moreno further testified that he received a call from Petitioner on the evening of October 15, 2005 indicating that there was an incident at Springfield Mall where several MS-13 gang members jumped rival gang members. (*Id.* at 1102–03.) Agent Moreno stated that he officially signed up Petitioner as a confidential informant on October 17, 2005, two days after the attack. (*Id.* at 1107.) Agent Moreno admitted on cross examination that on October 11, 2005, when he talked to Petitioner about being a confidential informant and released him from custody he encouraged Petitioner to gather information about MS-13 and to continue to hang out with his friends. (*Id.* at 1119–20.) As such, Petitioner's testimony about cooperating with Agent Moreno would have been cumulative.

In terms of the credibility of Petitioner's testimony, during the evidentiary hearing, the Government put forth evidence of Petitioner's changing story regarding what happened on the evening of the attack. When Petitioner first discussed the attack with Agent Moreno, he claimed that he was just shopping in the mall and learned of the attack after the fact. Subsequently, when he was arrested, he admitted to being at the meeting in the park and knew that the gang members

were planning on going patrolling, but he denied giving the order to attack. (Trial Tr. Dec. 10, 2007, at 1112–13.) Eventually, at the proffer meeting, Petitioner claimed that although he was at the mall, he did not receive any calls, but when presented with evidence refuting that assertion, he changed his story again to admit that he made calls while at the mall. Had he testified at trial, Petitioner would also have opened himself up to additional cross examination regarding specific previous incidents of his inconsistent statements, such as initially giving Agent Moreno a false name, false birthdate, and denying any leadership role in the Normandy clique of the MS-13 gang.

Additionally, had Petitioner taken the stand, he would have exposed himself to cross examination that would have impeached his character. Specifically, he would have been forced to answer questions about his role as the leader of the gang and his past crimes of violence. Furthermore, he would have been open to questions regarding why he did not take affirmative steps to prevent the attack such as notify the police or Agent Moreno in advance of the attack once he knew that the gang was going to go patrolling.

In terms of the overwhelming evidence against Petitioner, the theory his attorney presented at trial was that although he was a member of MS-13 and was present at the meeting in the park and at the mall during the attack, he was acting as a confidential informant and he was not directing the attack. (Trial Tr. Dec. 4, 2007, at 318–20.) The overwhelming evidence presented at trial to rebut this theory was from both Agent Moreno and various members of MS-13, including his co-defendants. Agent Moreno testified that when he discussed the possibility of being an informant with Petitioner on October 11, 2005, he specifically instructed Petitioner that he could not commit any crimes and that he could not order anyone else to commit crimes. (Trial

21

Tr. Dec. 10, 2007, at 1101–02.) Agent Moreno also testified that Petitioner later admitted that he was the leader of the Normandy clique of MS-13, despite his earlier denials. (*Id.*)

Throughout the course of the trial, a number of Petitioner's fellow MS-13 gang members testified against him such as Bismark Tercero, Obando Rivera (aka "Travieso"), Walter Guzman Sosa, and Julio Guzman Sosa (aka "Little Shy Boy"). These individuals testified that Petitioner was the leader of Normandy clique of the MS-13 gang, who helped "jump" them into the gang and explained the rules that every time they saw a chavalas (rival gang member), they were supposed to attack them. They also discussed other attacks led by Petitioner and that he carried a knife and sometimes a machete with "The Holy Death" inscribed on it. Regarding the attack at the Springfield Mall, these individuals testified that not only was Petitioner at the meeting in the park, but that he led the meeting in which they decided to go patrolling for chavalas. They testified that following the meeting, Petitioner rode in the lead car in the patrol and directed the attack from the mall on his cell phone.

Given the cumulative nature of Petitioner's desired testimony, the fact that he would have exposed himself to a very strong impeachment discrediting his whole defense theory, and that the evidence against him was overwhelming, even if the extent of the Court's colloquy was in error, Petitioner has not demonstrated prejudice sufficient for relief for his claim that he was denied the right to testify. Therefore, this claim must be denied.

### iii.   Lack of Jurisdiction

Petitioner's claim that this Court lacked jurisdiction over the case could have been raised on direct appeal but was not, therefore, Petitioner's claim is improper in this § 2255 Motion. Additionally, Petitioner has demonstrated neither cause and prejudice nor a miscarriage of justice in order to overcome the fact that the claim was procedurally defaulted and as such it is denied.

Even if this claim was properly before the Court in this § 2255 Motion, Petitioner has failed to provide a legal or factual argument on this issue.

Petitioner claims that this Court lacked jurisdiction because of "divestiture of federal jurisdiction of pattern of overreaching by Government officials against political target." (Doc. 243, at 9.) Petitioner provides *Johnson v Zerbst*, 304 U.S. 458 (1938), as support for his claim. *Johnson v. Zerbst*, however, holds that under the Sixth Amendment, federal courts have no power or authority to deprive an accused of his life or liberty, unless he has or waives the assistance of counsel. *Id.* at 462. During the evidentiary hearing on April 7, 2014, Petitioner did not make any arguments regarding this Court's jurisdiction over the dispute. *Johnson v. Zerbst* is not applicable to the facts of this Motion. Petitioner did not waive his right to counsel and in-fact had the benefit of court-appointed counsel throughout his trial and appeal.  Furthermore, this Court had jurisdiction over Petitioner's violation of 18 U.S.C. § 1959 stemming from a stabbing at a mall in Springfield, Virginia. As Petitioner has not provided any additional facts or arguments relating to his claim that this Court lacked jurisdiction, the claim is denied.

      iv.    Defense of Entrapment

Petitioner's claim of entrapment could have been raised on direct appeal but was not, therefore, Petitioner's claim is improper in this § 2255 Motion. Additionally, Petitioner has demonstrated neither cause and prejudice nor a miscarriage of justice in order to overcome the fact that the claim was procedurally defaulted and as such it is denied.

Substantive defenses such as entrapment must be raised at the trial and on appeal, otherwise they are waived. The defense of entrapment cannot be raised on collateral attack by a § 2255 motion. *See Eaton v. United States*, 458 F.2d 704, 707 (7th Cir. 1972) (holding that entrapment is a non-jurisdictional defense on the merits); *see e.g.*, *Lothridge v. United States*,

441 F.2d 919, 922 (6th Cir. 1971); *Evans v. United States*, 408 F.2d 369, 370 (7th Cir. 1969); *Benthiem v. United States*, 403 F.2d 1009, 1010 (1st Cir. 1968); *Matysek v. United States*, 339 F.2d 389, 391 (9th Cir. 1964); *Moore v. United States*, 334 F.2d 25, 27 (5th Cir. 1964); *Way v. United States*, 276 F.2d 912, 913 (10th Cir. 1960). Entrapment is an affirmative defense distinct from a violation of due process, although both allegations may rely on the same facts. *See United States v. Hunt*, 749 F.2d 1078, 1084 (4th Cir. 1984) (analyzing simultaneous entrapment and due process claims).

Therefore, to obtain relief in a § 2255 motion on a waived defense, Petitioner must meet the two part "cause and actual prejudice" test. *Frady*, 456 U.S. at 167–68. When raising an entrapment defense, the initial burden is on the defendant to go forward with evidence beyond a mere scintilla that the government induced him to commit an offense he was not otherwise predisposed to commit. *United States v. Osborne*, 935 F.2d 32, 38 (4th Cir. 1991); *see also, United States v. Perl*, 584 F.2d 1316, 1321 (4th Cir.1978). In *Matthews v. United States*, 485 U.S. 58 (1988), the Supreme Court established a two-part test for use in establishing an affirmative defense of entrapment: 1) whether there was inducement on the part of the Government; and 2) whether the defendant showed a predisposition to commit the crime.

"'Inducement' is a term of art: it involves elements of governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party. Solicitation, by contrast, is the provision of an opportunity to commit a criminal act." *United States v. Sligh*, 142 F.3d 761, 763 (4th Cir. 1998) (quoting *United States v. Daniel*, 3 F.3d 775, 778 (4th Cir. 1993)). A showing of mere government solicitation is insufficient to merit an entrapment instruction "because solicitation by itself is not the kind of conduct that would persuade an otherwise innocent person to commit a crime, or that would be so inducive to a

reasonably firm person as likely to displace *mens rea*." *Osborne*, 935 F.2d at 38 (citations omitted).

The government may provide the opportunities or facilities for the commission of an offense by one otherwise predisposed to criminal activity without committing entrapment. *Id.* at 37. Thus, if a defendant's predisposition is established, the defense of entrapment may not be based on government misconduct. *United States v. Akinseye*, 802 F.2d 740, 744 (4th Cir.1986).

Petitioner does not offer any new facts or clear arguments that would demonstrate a defense of entrapment on the part of the Government or actual prejudice resulting from errors regarding this defense. Petitioner alleges the following in his *pro se* § 2255 Motion:

> In 10/05, [presumably October 2005], ICE agents caught me again, taking me to their ICE station in Fairfax, VA. . . . I told them my story and they . . . told me that they were going to help me. They made the claim of help because they also knew that I was a party to the MS-13 "gang" as they called it, from my participation in El Salvador, used to survive and get along against the military regime. They stated that they had a deal for me. We're going to release you to go back to the "gang," to monitor their activities. They knew full well that I was a non-violent working member. . . . I was a plumber by trade. . . . About 3-days later, [on October 15, 2005,] the crimes . . . occurred in a Mall in Springfield, VA . . . The following day I met with the Agents, off my phone call directive, the evening of the crime, reporting what had transpired. As a result, they caught all parties involved in the crime, including Henry [Menjivar], but they could not prove anyone guilty because none would make statements...against others.

(Doc. 243, at 4B, ¶¶ 12–16.)

Petitioner continues to explain that on October 17, 2005, he was contracted by an agent of ICE and local Fairfax police to be an agent to infiltrate gangs and prevent them from committing violence using his position as Lieutenant as a member of MS-13. (*Id.* at 4B ¶ 17.)[1]

---

[1] The trial testimony of ICE Agent Eric Roberto Moreno includes a different version of the facts than those stated in Petitioner's Motion (Trial Tr. Dec. 10, 2007, at 1089–1103); however, even if this Court takes Petitioners statement of facts as true, Petitioner still fails to meet his burden under the two part "cause and actual prejudice" test.

During the evidentiary hearing held on April 7, 2014, Petitioner did not make any arguments regarding the defense of entrapment.

Petitioner fails to establish an inducement on the part of the government. Petitioner's release from custody is barely a claim of solicitation and does not establish governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party. If anything, the government's conduct was the opposite of solicitation, releasing Petitioner out of ICE custody to monitor MS-13 in order to prevent crimes while working as a plumber by trade. Furthermore, Petitioner's actions (and therefore the government's alleged solicitation) after October 17, 2005 were not the subject matter of Petitioner's conviction and § 2255 Motion. The issue of predisposition need not be resolved because the Petitioner has failed to allege inducement on the part of the government. Inherent in Petitioner's Motion is the claim of an error because the Court did not charge the jury with defense of entrapment. The Court did not charge the jury on the entrapment defense because there was no evidence to support it.

In conclusion, Petitioner has failed to establish cause and prejudice, and the issue of entrapment cannot be raised on collateral attack under § 2255. Therefore, the Court denies Petitioner's claim because under the available record and Petitioner's statement of the case, there is no support for the allegation of entrapment.

v.    Prosecutorial Misconduct

The Court denies Petitioner's claims of prosecutorial misconduct. Petitioner's allegation of prosecutorial misconduct, alleging improper communications between the prosecutors and the jury, was procedurally defaulted and is improper in a § 2255 motion. Petitioner's allegations of a

*Brady* violation arising from knowledge of Petitioner's innocence is properly the subject of a §

2255 motion, however, Petitioner has not met his burden of proof.

      *i.*    *Prosecutor's Alleged Contact with the Jury*

A claim of prosecutorial misconduct is procedurally defaulted if it could have been, but

was not, raised on appeal. *United States v. Gabriel*, 525 F. Supp. 173, 178 (N.D. Ill. 1981), *aff'd*,

692 F.2d 759 (7th Cir. 1982). Though claims of prosecutorial misconduct are cognizable under

federal habeas corpus review, misconduct must so infect trial with unfairness as to make the

resulting conviction a denial of due process. *See George v. Angelone*, 901 F. Supp. 1070, 1081

(E.D. Va. 1995), *aff'd as modified*, 100 F.3d 353 (4th Cir. 1996) (citing *Payne v. Tennessee*, 501

U.S. 808, 831 (1991) and *Darden v. Wainwright*, 477 U.S. 168 (1985)).

To prove reversible prosecutorial misconduct, the Petitioner must show: (1) the

prosecutor's remarks or conduct must in fact have been improper; and (2) such remarks or

conduct must have prejudicially affected the defendant's substantial rights. *United States v.*

*Chorman*, 910 F.2d 102, 113 (4th Cir. 1990); *see also United States v. Scheetz*, 293 F.3d 175,

185 (4th Cir. 2002) (stating reversible prosecutorial misconduct occurs when Government

engages in "improper" conduct that "prejudicially affect[s]" an individual's "substantial rights so

as to deprive him of a fair trial"). The *Chorman* court stated that:

> Several factors are relevant to the determination of possible prejudice to the
> defendant: '(1) the degree to which the prosecutor's remarks have a tendency to
> mislead the jury and to prejudice the accused; (2) whether the remarks were
> isolated or extensive; (3) absent the remarks, the strength of competent proof
> introduced to establish the guilt of the accused; and (4) whether the comments
> were deliberately placed before the jury to divert attention to extraneous matters.'

910 F.2d at 113 (quoting *United States v. Harrison*, 716 F.2d 1050, 1052 (4th Cir. 1983)).

Petitioner alleges that "the Prosecutor then took the jury into another room to supposedly

give them additional [jury] instruction[s]." (Doc. 243, at 4F, ¶ 66.) Although there were two

prosecutors from the Office of the United States Attorney, Patrick Stokes and Beth Gibson, Petitioner does not acknowledge to which prosecutor his allegations refer. After reviewing the record and the trial transcript, the jury was properly withheld from the courtroom and waiting in the jury room during all oral argument regarding jury instructions. (Trial Tr. Dec. 18, 2007, at 1622–36, 1874–82.) The record and transcript reflect that Ms. Gibson properly addressed the jury during closing arguments. (*Id.* at 1694–1724.) Petitioner's trial counsel testified in the evidentiary hearing that there was no improper contact between the prosecutors and the jury. When Petitioner testified during the evidentiary hearing, he was unable to point to any concrete occurrence or observation that led him to believe that the prosecutor was allowed to be alone with the jury and give them further instructions.

There is nothing in the record from which it can be inferred that any communications between the prosecutor and jury were improper. The Court denies Petitioners claim of prosecutorial misconduct because under the available record and the testimony from the evidentiary hearing, there is no support for the allegation.

### b. Alleged Brady Violation

Although allegations of a *Brady* violation are properly plead in a § 2255 motion, Petitioner has not met his burden of proof by showing that the prosecutors withheld evidence.

Under 28 U.S.C. § 2255, a prisoner in federal custody may challenge the legality of a federal sentence if the sentence was imposed in violation of the Constitution or laws of the United States. A *Brady* due process violation occurs where the government fails to provide a defendant with material exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Hackley*, 164 F. App'x 301, 304 (4th Cir. 2006). In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request

violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. In order to prove a *Brady* violation, a defendant must show that the undisclosed materials were (1) favorable to the defendant; (2) material; and (3) that the prosecution had the materials and failed to disclose them. *United States v. Sarihifard*, 155 F.3d 301, 309 (4th Cir. 1998) (citing *Moore v. Illinois*, 408 U.S. 786, 794–95 (1972)). Furthermore, the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police and other government agencies involved in the investigation. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *e.g. Barbee v. Warden, Md. Penitentiary*, 331 F.2d 842, 845 (4th Cir. 1964) (police officers); *United States v. Thornton*, 1 F.3d 149, 158 (3d Cir. 1993) (DEA agents).

Nonetheless, there is no *Brady* violation where exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked. *United States v. Wilson*, 901 F.2d 378 (4th Cir. 1990) (finding no *Brady* violation where defendant was free to question witness in preparation for trial to determine if witness could have supplied defendant with exculpatory evidence); *see also Harris v. Kuba*, 486 F.3d 1010, 1015 (7th Cir. 2007) (finding no duty for the government to disclose what defendant already knew).

Petitioner alleges that the Prosecutor constructively possessed ICE officer and FBI agent testimony indicating that Petitioner was actually innocent of the crime charged. (Doc, 243, at 4A, 4B, 4C, 5.) Specifically, Petitioner states:

> [In May 2007] (5/07), an Agent of Fairfax Cty., called me for a meeting. . . They took me to the county jail in Alexandria, Va. From County I called ICE Agent [Eric Roberto] Moreno. I told him what was going on, [and] he came to the County Jail with two FBI Agents [Saale and Wolff]. [He said that] "[w]e're going to see the federal prosecutor." . . . Moreno [, the ICE agent,] told the prosecutor everything we know [sic] about the stabbing and murder of the girl. As a result, they know I was completely innocent. The prosecutor stated that "I believe you," but you know that we need your testimony. I told them that I could not testify to

the facts you had put together because it is "fake" and it is not what happened. They were trying to convict parties they assumed were guilty of some crime(s), not those in the indictment (stabbing) . . . The ICE agent [Eric Roberto Moreno] explained to the prosecutor that "this man is innocent" but the prosecutor stated that "this man" is the only one who can help us with this case because of his former status as an Agent and a "gang" member. The Prosecutor then that stated that I was going to remain in jail. "Think about what you have to do."

(*Id.* at 4C, ¶¶ 38–40.)

Petitioner also alleges that ICE Agent Moreno and the FBI knew that Henry Manjivar was the real perpetrator of the crimes Petitioner was charged with. (*Id.* at 4B.) ICE agent Moreno and FBI Agent Robert Saale both testified at trial. ICE Agent Moreno was called as a witness for the prosecution, and he testified to several interviews and meetings with Petitioner regarding the crime. (Trial Tr. Dec. 10, 2007, at 1086–1124.) Specifically, ICE Agent Moreno testified that although Petitioner agreed to cooperate with the government prior to October 15, 2005, the date of the stabbing, he was not officially a confidential informant on October 15, 2005. (*Id.* at 1098–99.) Furthermore, ICE Agent Moreno testified that Petitioner lied to him in the meetings prior to the October 15th crime regarding his role in MS-13 and his position as a leader in the gang. (*Id.* at 1110.) ICE Agent Moreno did not testify as to any May 2007 meeting with the Petitioner. Petitioner's trial counsel cross-examined ICE Agent Moreno and questioned him regarding the October 11, 2005 meeting prior to the commission of the crime, other meetings on October 17, 2005 and October 19, 2005, and Petitioner's role in identifying other members in the October 15, 2005 crime. (*Id.* at 1119, 1138.)

FBI Agent Saale was called as a defense witness and was under direct examination from defense counsel John Iweanoge, Ivan Davis, and Daniel Lopez, attorneys for the co-defendants. During the direct examination, Petitioner's trial counsel raised two objections (*Id.* at 1379, 1390), but he did not question the witness himself.

30

Because ICE Agent Moreno and FBI Agent Saale testified under oath at trial, their testimony was available to Petitioner. Therefore, no *Brady* violation could have occurred because nothing was withheld from Petitioner. *See Chandler v. French*, 252 F. Supp. 2d 219, 232 (M.D.N.C. 2003), *aff'd sub nom. Chandler v. Lee*, 89 F. App'x 830 (4th Cir. 2004) (finding that no *Brady* violation for withholding a report where the information contained in the report was available to Petitioner through trial testimony); *see also United States v. Wilson*, 901 F.2d 378, 381 (4th Cir.1990) (holding that the Government did not have obligation to disclose allegedly exculpatory testimony of witness whom defendant was free to question and would naturally have interviewed in preparation for trial).

The Court denies Petitioner's prosecutorial misconduct claim because Petitioner has not presented any facts that would demonstrate improper conduct on the part of the prosecutor and the Petitioner has failed to meet his burden of proof with respect to his allegation of a *Brady* violation.

### vi. Ineffective Assistance of Counsel

This Court dismisses all four[2] claims regarding ineffective assistance of counsel because Petitioner fails to satisfy the two prongs of the *Strickland* test and further, there is no constitutional right to appointed counsel beyond the first appeal.

Petitioner claims ineffective assistance of counsel during three different periods: (i) during plea bargaining; (ii) during trial; and (iii) on appeal.

---

[2] Petitioner raises only three claims in his *pro se* § 2255 Motion: 1) ineffective assistance during the plea bargaining stage, 2) ineffective assistance during trial for not calling two witnesses, and 3) ineffective assistance on appeal for abandoning the case and not having been provided with appointed counsel for his § 2255 motion. Petitioner's Supplemental Memorandum clarifies that the claim that he was denied his constitutional right to testify also falls under his ineffective assistance of counsel claim.

i.     *Plea Bargaining Stage*

In the plea bargain context, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). A defense counsel's failure to communicate formal plea offers to a defendant would constitute deficient performance under the first part of the *Strickland* test. *Id.* at 1408. To demonstrate prejudice under the second part of the *Strickland* test where a plea offer has lapsed or been rejected due to counsel's deficient performance,

> defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or sentence of less prison time.

*Id.*

"[A]fter the fact testimony concerning a defendant's desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." *Berry v. United States*, 884 F. Supp. 2d 453, 463 (E.D. Va. 2012), *appeal dismissed*, 490 F. App'x 583 (4th Cir. 2012) (citing *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)).

Accordingly, to obtain relief, Petitioner must credibly demonstrate that he held an intention to plead guilty. *See Merzbacher v. Shearin*, 706 F.3d 356, 367 (4th Cir. 2013) ("But it is entirely clear that to demonstrate a reasonable probability that he would have accepted a plea, a petitioner's testimony that he would have done so must be credible."). In *Berry*, the petitioner never alleged that counsel failed to communicate the plea offer; rather the alleged error was bad

advice in counseling him to proceed to trial. The court in *Berry* rejected the petitioner's allegation because there was nothing in the record to suggest that the petitioner ever intended to plead guilty to the offenses with which he was charged. 884 F. Supp. 2d at 463. In *Berry*, the court pointed to the petitioner's testimony at trial and proclamation of innocence under oath as evidence undercutting his contention that his attorney's actions caused him to reject the government's plea bargain. *Id.* Thus, the court found that the petitioner did not meet his burden of showing that but for his attorney's errors, he would have chosen to plead guilty. *Id.*

### a. Trial Counsel's Repeated Suggestions that Petitioner Sign a Plea Agreement

The Court holds that Petitioner fails set forth a claim for ineffective assistance of counsel on the basis of the trial counsel's repeated suggestion that Petitioner sign a plea agreement. Petitioner alleges that trial counsel's representation was ineffective because he repeatedly suggested that Petitioner sign a plea agreement. According to Petitioner, trial counsel visited him frequently in the county jail and presented multiple versions of a plea agreement from the United States Attorney, offers which ranged from 36 months to 120 months. (Doc. 243, at 4C.) Petitioner does not allege that he did not understand any of the plea offers from the government or that his trial counsel failed to communicate a plea offer to him. To the best the Court is able to discern, Petitioner seems to be alleging that he believes his attorney was in cahoots with the prosecutors as evidenced by the numerous plea agreements that trial counsel urged Petitioner to sign.

The Court rejects this argument. First, because defense attorneys have the duty to present and explain all formal plea offers to their clients, trial counsel was merely following through with his professional obligations when he presented the numerous offers to Petitioner. *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). Second, there is no evidence in the record to support any

sort of allegation that trial counsel had entered into some sort of secret agreement with the prosecution. Third, Petitioner would have to demonstrate that there is a reasonable probability that but for his counsel's continuous suggestions to sign favorable plea agreements, Petitioner would have pled guilty and received a lesser sentence. Petitioner is unable to demonstrate this because he has never demonstrated a desire to plead guilty, and in fact continues to assert his innocence in the present § 2255 Motion. Therefore, the Court denies Petitioner's claims for ineffective assistance of counsel regarding the communication of plea agreements.

### b. Trial Counsel's Explanation of the Strength of the Evidence

Petitioner also alleges that trial counsel inadequately explained the strength of the Government's evidence against him. Petitioner contends trial counsel "stated that they do not have anything against you. The only evidence they have on you is a witness who says that he knows you." (Doc. 243, at 4C.) However, Petitioner asserts that these statements came after he "told Crawley that [he] was going to take [his] case to trial and [he] wanted to know what evidence that had against [him]." (*Id.*) Petitioner further stresses that trial counsel's "only concern was manipulating me into a plea of guilty to the crimes to which I was innocent." (*Id.*) From Petitioner's account, Petitioner had already decided not to accept the plea bargains that trial counsel continued to communicate. (*Id.*)

The first question is whether Petitioner's allegations of deficient advice regarding the evidence against him fall below an objective standard of reasonableness. It is unclear whether after rejecting all plea agreements, a defense counsel's communication of the evidence against a defendant can be objectively deficient. In a similar fact pattern in *Michael v. United States*, 168 F. Supp. 2d 518, 524 (D. Md. 2001), the court found the "petitioner's subjective opinion as to whether counsel appreciated the magnitude of the evidence against him is irrelevant under an

objective standard of reasonableness." The *Michael* court instead looked to the record and found that counsel was very aware of the overwhelming evidence against Petitioner and in fact made strategic decisions based on that knowledge. Similarly, this Court finds that the record indicates that trial counsel was well-prepared for trial and his assistance during trial was reasonable. Furthermore, Petitioner's allegations that trial counsel continuously presented him with plea agreements and tried to convince him not to proceed to trial seems to be incompatible with his claim that trial counsel told him that the prosecutors do not have anything against him.

Additionally, defense counsel arranged for the Government attorneys to meet with him and Petitioner for a "reverse proffer" where the Government attorneys showed the Defendant some of the evidence and identified some of the witness testimony it intended to present at trial.

Under the prejudice prong of the *Strickland* test, Petitioner fails to establish a reasonable probability that, but for trial counsel's failure to explain the evidence after Petitioner rejected the plea offers, the result of the proceeding would have been different. Petitioner's continued contention of innocence affirms that the Petitioner fails to provide a reasonable probability that he was prejudiced by counsel's advice regarding the evidence against him. This is particularly true given that Petitioner has asserted that his counsel continued to present him with plea agreements throughout the trial, after Petitioner had heard for himself much of the evidence against him. (Doc. 243, at 4D.) As such, the Court denies Petitioner's claim of ineffective assistance of counsel that is based on trial counsel's alleged failure to adequately explain the strength of the evidence against Petitioner.

ii.    *Trial Stage*

a.  Witness Selection

Trial counsel's decision not to call the two witnesses suggested by Petitioner did not amount to ineffective assistance of counsel for two reasons. First, the decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney. Second, Petitioner has not alleged that the witnesses had exculpatory testimony.

In a criminal trial, defense counsel has the authority to manage most aspects of the defense without first obtaining the consent of the defendant. *See Florida v. Nixon*, 543 U.S. 175, 187 (2004). "Decisions that may be made without the defendant's consent primarily involve trial strategy and tactics, such as what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." *Sexton v. French*, 163 F.3d 874, 885 (4th Cir.1998) (internal quotation marks omitted). "The decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney" (*Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008)), and "it remains for counsel even when the client disagrees." *United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010) (citing *Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir.1991) ("[T]he trial court overreached its authority and infringed upon the relationship between Blanco and his attorneys by requiring defense counsel to call two additional witnesses [as requested by the defendant]. . . . The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel." (footnotes omitted)).

Petitioner argues that trial counsel rendered ineffective assistance of counsel because he did not call Petitioner's cousin, Alex Portillo, or Tomasa Trejo as witnesses during the trial. (Doc. 243, at 4D.) In his § 2255 Motion, Petitioner makes clear that Tomasa Trejo made the

decision on her own not to testify. (*Id.*) Petitioner states that Ms. Trejo visited him in jail and told him that she no longer wanted to testify. The Court cannot find that an attorney was ineffective for not calling a witness who voluntarily decided on her own not to testify. Petitioner's evidentiary hearing testimony confirmed, in-fact, that his trial counsel contacted the potential witnesses, but found that they had nothing substantive to offer.

Furthermore, Petitioner does not even allege that Alex Portillo would have provided exculpatory evidence. (Doc. 243, at 4D.) He simply states that his trial counsel was ineffective for not calling Alex Portillo without actually alleging what Alex Portillo's testimony would have been or that the testimony would have any effect on the outcome of the case. Under the second prong of the *Strickland* test, a petitioner must allege that but for the attorney's errors, the results of the proceedings would be different. As Petitioner has not alleged that Alex Portillo's testimony would have been exculpatory nor explained how his testimony would affect the outcome of the trial, he has not met the requirements of *Strickland*. Accordingly, the Court denies Petitioner's claim for ineffective assistance of counsel regarding witness selection during trial.

### b. Petitioner's Decision Not to Testify

The Court holds that Petitioner fails to satisfy the objective test of *Strickland* regarding his claim that his trial counsel was ineffective by allegedly denying Petitioner of his right to testify on his own behalf. The Court finds that Petitioner has not sufficiently shown that trial counsel's actions fell below the objective standard of reasonableness, and further, for the reasons stated *supra*, Petitioner has not established that he was prejudiced by not testifying on his own behalf.

In arguing that his trial counsel was ineffective, Petitioner puts forth two arguments as to how trial counsel denied Petitioner his right to testify. First, in his Supplemental Memorandum, Petitioner argues that "Defense counsel, however, impeded his ability to do so [testify] by informing the trial court that Petitioner was going against his wishes and by soliciting the Court's intervention." (Doc. 314, at 4.) Petitioner describes trial counsel's actions as "an attempt to stop Petitioner from testifying." (*Id.*) Second, during the evidentiary hearing, Petitioner argued that when he still insisted on testifying during the recess after the colloquy, his trial counsel threatened that his ICE contract would be shown to his co-defendants who would then issue a green light (kill order) against him.

In determining whether trial counsel's actions fell below an objective standard of reasonableness, "[a] court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689). Where a defendant desires to testify against the recommendation of his counsel, "it may be advisable that the trial court inquire discretely into the disagreement and ensure that constitutional rights are not suppressed wrongly." *United States v. Pennycooke*, 65 F.3d 9, 13 (3d Cir. 1995); *see also Ortega v. O'Leary*, 843 F.2d 258 (7th Cir. 1988) (where defendant requested to testify despite defense attorney's representation that a joint decision had been made not to testify, it would have been advisable for the court to conduct a colloquy to insure that "important constitutional rights have been voluntarily and intelligently waived"). Additionally, ABA Criminal Justice Section Standard 4-5.2(c) also recommends that if a "disagreement on significant matters of tactics or strategy arises between defense counsel and the

38

client, defense counsel should make a record of the circumstances, counsel's advice and reasons, and the conclusion reached."

During the evidentiary hearing, trial counsel explained his trial strategy with respect to defense's theory of the case and his advice not to testify. He indicated that he had some initial conversations about Petitioner's potential testimony at trial, and that after advising Petitioner that it would not be in his best interest to testify, Petitioner did not insist on his desire to testify until the trial was partially completed. Trial counsel made the recommendation to Petitioner not to testify because it would expose Petitioner to attacks on his credibility, his involvement in past acts of violence as leader of the gang, his illegal reentries, and questions regarding why he did not take any affirmative steps to stop the stabbing such as contacting Agent Moreno. As such, counsel's trial strategy was to present the evidence favorable to Petitioner through the government's witnesses on cross examination. Specifically, he cross examined Agent Moreno about Petitioner's work cooperating with the government including the call he made after the stabbing to inform Agent Moreno of what had occurred. Additionally, trial counsel cross examined the other gang members that testified to show that none of them saw Petitioner physically attack the victim and some of them did not even hear him on the phone ordering the attack.

In light of the disagreement between Petitioner and trial counsel regarding the decision of whether to testify or remain silent, the Court finds that it was reasonable for trial counsel to make a record before the Court of the disagreement and to ensure that Petitioner was aware of his rights both to testify and to remain silent. In fact, had trial counsel not requested the Court to conduct a colloquy, there would have been no record of the disagreement at all. Therefore, the

Court finds that Petitioner has not met his burden to overcome the presumption that his trial counsel acted reasonably in the present case.

With regard to Petitioner's claim that his trial counsel coerced him into not testifying by threatening that his ICE contract would be shown to his co-defendants who would then issue a green light (kill order) against him, the Court finds this allegation not to be credible. During the evidentiary hearing, the parties explicitly stipulated that the ICE contract, which would have provided proof of Petitioner's cooperation with the government, was entered into evidence during the government's case and therefore was already in the record prior to the colloquy and the recess. Additionally, Petitioner's theory of the case, which was presented to the jury as early as opening statements, was that Petitioner was a cooperating informant at the time of the attack. Furthermore, trial counsel testified that during the recess he discussed the pros and cons of testifying, but at no time did he threaten Petitioner with the ICE contract. As such, the Court finds that Petitioner's claim that trial counsel used the ICE contract to coerce him into not testifying is not credible and therefore could not support an argument that counsel's actions fell below an objective standard of reasonableness.

Even if Petitioner could establish that his trial counsel's conduct was deficient under either theory, he has not made the requisite showing of prejudice necessary under *Strickland*, that "the result of the proceeding would have been different." 466 U.S. at 693. As explained *supra*, the Court finds that had Petitioner testified during trial his testimony would have been both cumulative and not credible, and the weight of evidence against Petitioner was overwhelming such that a jury could have found him guilty regardless. As such, Petitioner has not shown prejudice such that had he testified, the outcome of the trial would have been different.

40

Therefore, the Court denies Petitioner's claim for ineffective assistance of counsel regarding the right to testify at trial.

### iii.    On Appeal

The Court denies Petitioner's claim of ineffective assistance of counsel on appeal for two reasons. First, defense counsel did not abandon Petitioner's case—he chose not to pursue an additional appeal that he felt was frivolous. Second, there is no constitutional right to counsel on a second appeal or § 2255 motion.

In *Evitts v. Lucey*, 469 U.S. 387, 393 (1985), the Supreme Court established that criminal defendant's right to appellate counsel is limited to first appeal as of right, and that the defense counsel need not advance every argument, regardless of merit, urged by appellant. A defense counsel must be available to assist in preparing and submitting a brief to the appellate court and must play the role of an active advocate, rather than mere friend of the court assisting in detached evaluation of appellant's claim. *Id.* There is no right to counsel after the first appeal of a conviction.

### a.    Allegation that Attorney Abandoned the Case

In applying the *Strickland* test to claims of ineffective assistance of counsel on appeal, "reviewing courts must accord appellate counsel the presumption that he decided which issues were most likely to afford relief on appeal." *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (citations omitted). While it is possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim on direct appeal, the Supreme Court has recently reiterated that "it [will be] difficult to demonstrate that counsel was incompetent." *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (quoting *Smith v. Robbins*, 528 U.S. 259, 286 (2000)).

41

Petitioner argues that his defense counsel abandoned his case after the decision by the Fourth Circuit affirming the conviction. In support, Petitioner provides a letter written by trial counsel in which he explained that he would not file a petition for rehearing or a certiorari petition after the Fourth Circuit upheld Petitioner's sentence because he believed the petition would be frivolous. (Pet. Ex. B1, B2.) The Supreme Court has held that a petitioner can only succeed with an ineffective assistance of counsel claim if Petitioner has an independent constitutional violation.   *Coleman v. Thompson*, 501 U.S. 722, 755 (1991). Petitioner's contention that defense counsel abandoned his case because he would not file a petition for rehearing or certiorari petition asserting frivolous claims fails because there is no right to counsel after the first appeal. As such, the Court rejects Petitioner's claim that his attorney abandoned his case.

    b.  Incompetent "Jailhouse Counsel"

The Court denies Petitioner's claim for ineffective assistance of counsel during the preparation of the § 2255 Motion presently before the Court because Petitioner has no right to appointed counsel to assist him in filing a § 2255 motion.[3] Although indigent litigants may petition a court for appointment of counsel, the court has discretion to decide when the appointment of counsel is necessary in the interest of justice. 18 U.S.C. § 3006A(a)(2)(B); 28 U.S.C.A. § 2255(g). Appointment of counsel is mandated only if the court grants an evidentiary

---

[3] See, e.g., *United States v. Vasquez*, 7 F.3d 81, 83 (5th Cir. 1993) (no right to appointed counsel in § 2255 proceeding unless evidentiary hearing required); *Oliver v. United States*, 961 F.2d 1339, 1343 (7th Cir. 1992) (no 6th Amendment right to counsel under § 2255 because civil, rather than criminal, proceeding); *United States v. Craycraft*, 167 F.3d 451, 455 (8th Cir. 1999) (no general right to counsel in post-conviction habeas proceedings for criminal defendants); *United States v. Jordan*, 915 F.2d 622, 628 (11th Cir. 1990) (§ 2255 proceeding akin to independent civil suit, thus no right to counsel); *United States v. Barnes*, 662 F.2d 777, 780 (D.C. Cir. 1980) (appointment of counsel left to court's discretion).

hearing, Rule 8(c), or if the court permits discovery and deems counsel "necessary for effective utilization of discovery procedures." Rule 6(a).

This Court denied Petitioner's prior petition for court-appointed counsel on October 26, 2011. (Doc. 244.) Petitioner argues that he is without the assistance of counsel necessary for the adequate filing of his habeas corpus motion. (Doc. 243, at 2, 10–12.) The Supreme Court has held that a petitioner can only succeed with an ineffective assistance of counsel claim if Petitioner has an independent constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 755 (1991). Petitioner's contention that "jailhouse counsel" is inadequate fails because there is no constitutional right to appointed counsel for filing §2255 motions. Furthermore, the Court appointed Petitioner counsel for his evidentiary hearing.

     vii.    Miscellaneous Grounds Raised During Evidentiary Hearing

During the evidentiary hearing that took place on April 7, 2014, Petitioner briefly raised a number of arguments that were not raised in the § 2255 Motion and therefore are not properly before the Court. Such procedurally improper arguments include contentions that trial counsel's cross examination of one witness was too short, that a letter from Shy Boy did not come into evidence, and trial counsel's letter informing Petitioner of his appeal rights after the Fourth Circuit decision was mailed late. The Court cannot consider these arguments because they were not made in Petitioner's § 2255 Motion, nor were they made in the Supplemental Memorandum.

### III.   CONCLUSION

The Court **DENIES** Petitioner's Motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct his Sentence.

First, Petitioner's claims of actual innocence, judicial bias and misconduct, lack of jurisdiction, entrapment, and prosecutorial misconduct during trial are not properly before the

Court on a § 2255 motion because they were either addressed during his appeal or could have been pursued on direct appeal, but were not. Additionally, even if these claims were properly pursued, Petitioner has failed to meet his burden to show cause and actual prejudice or a fundamental miscarriage of justice. Second, even though Petitioner's claims of prosecutorial misconduct amounting to an alleged *Brady* violation and ineffective assistance of counsel are properly before the Court on a § 2255 motion, those claims fall short of meeting their respective tests—improper and prejudicial prosecutor conduct and the two-pronged *Strickland* test.

**IT IS HEREBY ORDERED** that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 243) is **DENIED.**

**IT IS SO ORDERED.**

ENTERED this _____ day of July, 2014.

Alexandria, Virginia

7/    2014

_____/s/_____
Gerald Bruce Lee
United States District Judge

44